FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 APR 23 PM 4: 19

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | | |
|---|---|---|---|
| SHANNON HACKETT, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | No. | CV 98-J-0030-S |
| | ) | | |
| UNITED PARCEL SERVICE, INC., | ) | | |
| | ) | | |
| Defendant. | ) | | |

ENTERED

APR 23 1999

## MEMORANDUM OPINION

This cause comes before this Court on Defendant's motion for summary judgment (doc. 17).

### Undisputed Material Facts

Plaintiff is an African-American female. Plaintiff sought employment via the Norrell temporary agency ("Norrell"). Norrell contracts with various companies to locate temporary workers for said companies. Norrell then screens workers and aligns potential temporary workers with its client companies. Norrell's temporary workers receive their paychecks from Norrell. When a particular assignment ends for a Norrell temporary worker, Norrell attempts to align the worker with another company in need of temporary help.

In May 1996, Norrell aligned Plaintiff with Defendant. Plaintiff went to work as a temporary employee in the COD department of Defendant's Birmingham, Alabama

1

facility as a returned check clerk. Because UPS had many temporary workers at its Birmingham facility, Norrell had an on-site liaison at UPS to handle situations which may arise between Norrell's temporary workers and UPS. Plaintiff never disputes that she was, at all times relevant to this lawsuit, a Norrell temporary worker and not a UPS "regular employee". (A "regular employee" is a traditional worker who is hired by UPS and whose salary is paid by UPS and who reports to no other supervisory authority than UPS.)

In February 1997, UPS told Norrell and Kelly Temporary Services ("Kelly") that it would be necessary to end the assignment of one temporary worker provided by each service. Plaintiff was the Norrell worker selected for cancellation of assignment. Jackie Hunt, a white female, was the Kelly worker selected. There is some dispute regarding the initial explanation provided to Plaintiff for the termination of her assignment at UPS. One version is that Plaintiff was told there was a reduction in available work. The other proffered explanation that Beverly Hudson and Michelle Troup, UPS regular employees, were being returned to the pool of COD clerks. Hudson was returning from a temporary reassignment to a managerial position, and Troup was returning from leave. The two proffered explanations are not contradictory. Rather, it is logical that the reduction in work available for temporary workers resulted from the return of two regular UPS employees to the pool of COD clerks.

Plaintiff's assignment was canceled in order for Hudson to return in mid-February

1997, and Hunt's assignment was to terminate upon the return of Troup in early March. Upon the termination of Plaintiff's UPS assignment, Ms. Hudson returned to the pool of COD clerks. On the day Troup was scheduled to return to work, she notified UPS that she had moved or was moving and would not be returning to her position. Thus, Hunt's temporary assignment was extended, and she continued to work at UPS.

When Hudson returned to the pool of COD clerks, she undertook her former responsibilities with returned checks and began assisting other COD clerks in order to increase the efficiency of the department. During this time, Hunt assisted various COD clerks as circumstances necessitated including, at times, Hudson's returned check duties. Hunt did not undertake Plaintiff's former responsibilities to the exclusion of all others in the department.

After Plaintiff's assignment at UPS ended, Norrell attempted to place her with other Norrell clients. However, Plaintiff refused each of Norrell's offerings for various reasons none of which are material to the case at bar.

## Summary judgment standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment

3

standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. P. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Clark & Coats, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D. Ala.); citing *Anderson*, 47 U.S. at 251-252.

## Analysis

*I.  Title VII*

Title VII provides, in part, that it "shall be an unlawful employment practice for an *employer* – (1) ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...."

5

(emphasis added). Thus, Plaintiff must first prove that UPS was her employer in order to recover for alleged Title VII violations. Plaintiff fails to meet this burden. The most telling fact regarding Plaintiff's relationship to UPS is her own testimony that she spoke to co-workers about seeking employment with UPS during here temporary assignment there. (*See* Deposition of Plaintiff at 84, 88, 89 & 90). Her actions are inconsistent with her allegation that she was an employee of UPS. Since UPS was not her employer, Plaintiff cannot sustain a viable Title VII action against UPS.

Even if Plaintiff were an employee of UPS, summary judgment would still be due on her Title VII claim. In order to recover for wrongful termination under Title VII, Plaintiff must show (1) that she was a member of a protected class, (2) that she was qualified for the position, (3) that she was fired, and (4) that she was replaced by one outside the protected class. *Hawkins v. CECO Corp.* 883 F.2d 977, 982 (11th Cir. 1989). If Plaintiff cannot demonstrate that she was replaced by someone outside the protected class, she must demonstrate, at a minimum, that she "was terminated 'while others not in the plaintiff's protected class, having comparable or lesser qualifications, were retained, or that the plaintiff suffered from differential application of work or disciplinary rules.'" *Moore v. State of Alabama*, 989 F. Supp. 1412, 1418 (M.D. Ala. 1997).

As a black female, Plaintiff is a member of a protected class, and she was terminated. Taking all the facts in the light most favorable to Plaintiff, she was qualified for the position of return check clerk. The record indicates that either Beverly Hudson or

6

Jackie Hunt assumed responsibility for the COD returned checks. Since both of these women are white, Plaintiff can demonstrate prong (4) for purposes of her *prima facie* case.

Once Plaintiff's *prima facie* case is demonstrated, UPS must articulate a legitimate, non-discriminatory reason for its actions. UPS has done this. In 1996, Beverly Hudson had been a regular UPS employee for at least fifteen years and was promoted to the position of "team leader" in the COD office. The team leader positions were experimental throughout UPS. It was Hudson's promotion that occasioned the need for temporary help for the returned check responsibilities (*i.e.*, Plaintiff's temporary position). Michelle Troup was also a UPS regular employee in 1996. The evidence is undisputed that Troup took leave from UPS during late 1996 and early 1997. Troup's absence occasioned the need for additional temporary help.

In February 1997, UPS faced the return of these two regular employees. Hudson's team leader position had been eliminated requiring her to return to the pool of COD clerks, and Troup was scheduled to return from leave in early March. Thus, UPS informed Norrell and Kelly that it would be necessary for each company to eliminate one temporary worker from the COD department. Plaintiff was the Norrell worker eliminated. Hunt was slated to be eliminated upon Troup's return. On the day Troup was scheduled to return to work, she informed UPS that she had moved or would soon be moving out of state and could not return to work in Birmingham. Troup's announcement

7

left a vacancy in the pool of COD clerks. Thus, the decision was made to allow Hunt to continue working in the COD department *as a temporary worker* supplied by Kelly temporary services.

Plaintiff has offered no evidence or argument to rebut UPS legitimate reason why it no longer needed her temporary services in the COD department. As such, summary judgment is due on Plaintiff's Title VII count <u>*even if UPS were Plaintiff's employer*</u>.


*II.    42 U.S.C. §1981*

Plaintiff relies heavily in her brief upon the fact that UPS was her employer in order to support her §1981 claim. The test for whether a company is an "employer" is the same under Title VII and §1981. *Standard v. A.B.EL. Services, Inc.* 161 F.3d 1318, 1330 (11th Cir. 1998). As discussed in the Title VII analysis above, UPS was *not* Plaintiff's employer. However, even if UPS were Plaintiff's employer, Plaintiff could not recover under 42 U.S.C. §1981.

> By its plain terms, the relevant provision in §1981 protects two rights: 'the same right ... to make ... contracts" and "the same right ... to ... enforce contracts." The first of these protections extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment. The statute prohibits, when based on race, the refusal to *enter into a contract* with someone, as well as the offer to make a contract only on discriminatory terms. But the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, *including breach of the terms of the contract or imposition of discriminatory working conditions.* Such postformation conduct does not

>involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII. ...
>
>The second of these guarantees, "the same right ... to ... enforce contracts ... as is enjoyed by white citizens," embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race. In this respect, it prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, and this is so whether this discrimination is attributed to a statute or simply to existing practices. ... The right to enforce contracts does not, however, extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights. As Justice WHITE put it with much force in *Runyon*, one cannot seriously "contend that the grant of the other rights enumerated in § 1981 [that is, other than the right to 'make' contracts,] *i.e.,* the rights 'to sue, be parties, give evidence,' and 'enforce contracts' accomplishes anything other than the removal of legal disabilities to sue, be a party, testify or enforce a contract. Indeed, it is impossible to give such language any other meaning." 427 U.S., at 195, n. 5, 96 S. Ct., at 2606, n. 5 (dissenting opinion) (emphasis in original).

*Patterson v. McLean Credit Union*, 491 U.S. 164, 176-176, 109 s. Ct. 2263, 2372-2373 (1989) (emphasis added).

In short, §1981 is a contract statute at its core. Thus, even assuming Plaintiff was employed by UPS, she must first prove that there was a contract or a potential contract with which UPS interfered in order to sustain an action under §1981. Plaintiff has failed to demonstrate the presence or potential for such a contract. Well-established Alabama law holds that employment is terminable at-will by either party for any reason unless there is an express and specific contract for lifetime employment or employment for a

9

specific duration. *Howard v. Wolff Broadcasting Corp.*, 611 So. 2d 307, 310 (Ala. 1992). "[E]mployees in Alabama bear a heavy burden of proof to establish that an employment relationship is other than 'at will.' The law considers lifetime or permanent employment contracts to be extraordinary and not lightly to be implied." *Id.* at 310-311 (*quoting Alabama Mills, Inc. v. Smith*, 186 So. 699, 704 (Ala. 1939)). In order to establish that an employment relationship is not "at will", a party must show: (1) a clear and unequivocal offer of lifetime employment or employment of a definite duration; (2) a hiring agent with authority to bind the principal to a permanent employment contract, and (3) an employee who provided substantial consideration for the contract separate from the services to be rendered. *Hoffman-LaRoche, Inc. v. Campbell*, 512 So. 2d 725, 728 (Ala. 1987). There are no facts in the record, and Plaintiff does not seriously contend, that UPS made a clear and unequivocal offer of lifetime employment or employment of a definite duration. Clearly, Plaintiff fails to meet the first prong of the test for an employment contract.

Plaintiff has failed to demonstrate that there was an employment contract, or even the potential for one, between herself and UPS. Thus, Plaintiff has failed to make the most basic showing necessary for recovery under §1981. The *Patterson* court makes clear that §1981 has a limited scope. There was no potential contract between UPS and Plaintiff. Thus, UPS could not have interfered with Plaintiff's right to make the non-existent "contract". And, since there was no contract, UPS could not have interfered with Plaintiff's right to enforce the non-existent "contract". Under these clear limits on §1981

10

articulated by the Supreme Court, Plaintiff has no viable claim against UPS for violation of §1981 *even if UPS were Plaintiff's employer*.

## Conclusion

Based upon the above analysis and in accordance with the separate order this day entered;

It is therefore **ORDERED** that Defendant's motion for summary judgment (doc. 17) be and hereby is **GRANTED**.

**DONE and ORDERED** this the 23 day of April, 1999.

*Inge P. Johnson*
Inge P. Johnson
United States District Judge